THE MASSACHUSETTS IRON COMPANY *vs.* ROBERT HOOPER & others.

A creditor of an insolvent debtor, claiming a lien on certain property of the debtor, may apply to this court, exercising the chancery powers conferred by *St.* 1838, *c.* 163, § 18, to have such a lien declared in his favor, without first proving his debt against the debtor's estate.

G. and his associates. having been incorporated by act of the legislature as a manu

facturing corporation, met and agreed to accept the act, and fixed the proportions in which the shares should be distributed, and also agreed that the corporation should purchase certain lands of G., with the buildings and machinery thereon, then unfinished, but to be completed by G. The corporation was afterwards organized, and G. conveyed the lands to them; but before he had finished the buildings, and machinery, or had paid all the instalments on his shares, and before any certificates had been issued to him, he became insolvent, and proceedings in insolvency were instituted. It was held that the corporation had no lien on the shares of G. for sums expended by them, before or after he became insolvent, in finishing said buildings and machinery.

SHAW, C. J.    The petitioners, a corporation established by law, apply to this court, exercising the powers vested in them by the insolvent laws, in the nature of a summary proceeding in equity, to revise a decision of the master in chancery, made in the proceedings in insolvency pending before him, in the case of Horace Gray and Nathaniel Francis, insolvent debtors.

The substance of the petition to the master was, that the Massachusetts Iron Company was incorporated by an act passed in March, 1847; that between that time and the actual organization, which took place on the 5th of May, 1847, to wit, on the 26th of March, 1847, it was agreed between said Horace Gray and Benjamin T. Reed and others to accept the act, to fix the amount of the capital stock at $300,000 and the proportion in which it should be taken and held by the associates, and to organize the corporation and carry on the business, for which it was established; that Gray agreed to take 150 shares at $1000 each, and the other associates and parties to take severally different sums, amounting in the whole, to $150,000, being the whole amount; and it was a part of the agreement, that the company to be organized should purchase, and Gray should sell to them, his estate at South Boston, with the buildings he was then erecting thereon, with fixtures and machinery specified, for the sum of $200,000, he to complete, finish, and furnish the same in the manner de scribed.    It appears that pursuant to this agreement, the company was organized on the 5th of May; and on the 15th of May, Gray executed a deed conveying the said estate to said corporation, but the buildings, fixtures and machinery, were not

then complete; that the company expended large sums stated, to finish and complete the work Gray had stipulated to do; also that Gray paid $130,000 and over towards his shares of $150,000, but that $18,000 and more still remained due on the shares, when Gray became insolvent and these proceedings were instituted, in November, 1847. No certificate of shares had been issued to Gray, when he became insolvent. The prayer of the petition of this company to the master was, to have a lien on his shares declared in their favor, not only for the arrears due on the shares, but also for all the sums which they had been compelled to pay, either before or after Gray so became insolvent, to complete the said buildings and furnish the same, which Gray, by virtue of his contract, ought to have done; and they deny that the assignees, or any other person claiming under Gray can equitably claim the benefit of such shares, or sell or dispose of the same, until the company are first repaid the sum due to them as aforesaid, and which Gray ought to have paid.

The answer of the assignees admits most of the facts. It admits that the company have a lien on the 150 shares, for the arrears of assessment; that is, it admits, that the company have the right to sell a sufficient number of said shares to pay those arrears, if not otherwise paid, but denies that such a lien can be declared or enforced by this process. It denies that the company can claim a lien, in any form, on these shares for any sums due the company by contract; it denies that the company was a party in form to the agreement referred to, which preceded the organization, and insists that whatever balance is due from Gray to the company, is a debt to be proved in common form.

The master decided against the allowance of the petition; and this is a petition to this court in nature of an appeal from that decision.*

The first ground of objection to the petition is, that the

* The petitioners' counsel cited *West* v. *Skip*, 1 Ves. Sen. 239, 242; *Dyer* v. *Clark*, 5 Met. 572, 575; Collyer on Partn. (Perk. ed.) § 125; *Foss* v. *Harbottle*, 2 Hare, 461, 489; *Parsons* v. *Spooner*, 5 Hare, 102, 109; *Gray* v. *Portland Bank*, 3 Mass. 364, 379.

company have proved no debt against the insolvents, and are therefore not creditors entitled to prosecute this petition. But we can perceive no force in this objection. The petitioners describe themselves as creditors standing in a particular relation, holding claims which they insist are not to be proved as ordinary debts, but to be provided for out of a particular fund indicated; and the very purpose of their application is, to call on the court to decide, whether they are not so entitled to claim.

2. The next question arises upon the effect of the agreement entered into before the organization, and specially set forth and annexed to the petition. This was an agreement amongst eleven individuals, of whom Gray was one, to the effect that they would accept the act of incorporation, proceed to act under it, and distribute and hold the stock amongst themselves, to the amount and in the proportions stated. The court are of opinion, that this was an agreement of the individuals with each other, in regard to the taking and apportionment of shares in the capital, to which the company was not a party. This agreement had its full completion in the organization of the company; or, if there was any failure, the remedy was to be sought against those who failed of performance, by those with whom the contract was made. The rights and liabilities of the parties to and amongst each other, and of each with the corporation after the organization, depended upon the relation subsisting between the corporation and its members. The agreement did not contemplate a partnership in any event. If it was carried into effect, and a corporation was organized, their rights would then be determined by the law regulating corporations. If not carried into effect, and no corporation should be organized, the agreement would be void.

3. The question then arises, whether this preliminary agreement, made amongst and between the individuals before the organization, could be so far regarded as a contract with the company when incorporated, that they could maintain any suit at law or in equity upon it? But it seems not necessary to decide that question; because, supposing the agreement

made after the organization of the company, could it be enforced as an agreement with them ? It appears to us quite clear, that it was an executory agreement only, resting in provisions, for which Gray may perhaps have been liable on his personal responsibility; but it created no lien on his shares. The shares did not then exist; he had a right, as between him and his associates, to have the shares assigned; but the shares did not exist as property until the company was organized and the shares were assigned to and accepted by him.

Had these persons, by their agreement, proposed to form a partnership instead of a corporation, there might have been in effect a lien upon the shares in favor of the partners, before the separate creditors could claim the shares as separate property. This results from the difference in the relations between a partnership and the individuals who compose it, on the one hand, and a corporation and its members, on the other. Upon the separate insolvency of a partner, his assignees commonly claim his interest in the partnership effects, after an account, in which his share in the capital would stand charged with all sums due from him to the firm. He has no share, in fact, until all his dues are paid.

But a corporation is a body politic, and a distinct person in law from all its members, so created for the express purpose of being a distinct and independent existence and capacity in legal contemplation, so that the corporation may contract or be contracted with, sue or be sued, by any one of its members.

In a partnership, the partners own the property specifically, as joint tenants, *per my et per tout;* but in a corporation, no member has any specific interest or right of property in the money, goods and effects of which its stock is composed; they are the property of the corporation.

Shares in a corporation are regarded as a distinct estate, saleable, and transferable, and attachable, as personal property. Banks have sometimes provided, by a special by-law, that all shares of stock shall be deemed hypothecated to the bank for any debt, the bank to hold the shares without a specific pledge. *Nesmith* v. *Washington Bank,* 6 Pick. 324;

*Plymouth Bank* v. *Bank of Norfolk*, 10 Pick. 454. The practice usually is, to take a specific pledge. Here there is no suggestion that the shares of the insolvent were pledged by any by-law or any specific pledge. An insurance office has no implied lien on the shares of a stockholder, for debts due the company, and cannot hold them against the purchaser or attaching creditor. *Sargent* v. *Franklin Ins. Co.* 8 Pick. 90. We know of no distinction, in this respect, between an insurance company and a manufacturing company.

4. Another ground taken by the petitioners is that, as no scrip or certificate of shares had been issued, Gray had no more than an equitable right to the stock, which could only be enforced by first paying all which was due to the company from him. But the court are of opinion that this is not tenable. Shares are recognized as separate property, assignable and attachable as the distinct property of the owner. An assignment and distribution of shares made by the company and entered on their books, and an assent by the stockholders, especially where that assent has been manifested by the decisive act of paying instalments on them, vests the title in the shareholder. A certificate is evidence only, and not necessary to complete the title. They may be taken and held on execution, though no certificate has issued. *Hussey* v. *Manufacturers' & Mechanics' Bank*, 10 Pick. 415.

The court are of opinion, that the Massachusetts Iron Company have no lien on the shares of Gray for any balance due, for completing, finishing and furnishing the mills and works, or for money due on general account; and, therefore, the decree of the master, dismissing their petition, must be affirmed.

*B. R. Curtis*, for the petitioners.
*C. G. Loring* and *F. C. Loring*, for the respondents.